FILED
2020 Jun-10  PM 12:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY BLACK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | |
| **YS GARMENTS, INC. D/B/A NEXT** | § | _____ |
| **LEVEL APPAREL** | § | |
| | § | |
| **Defendants.** | § | **JURY DEMAND** |
| | § | |

## COMPLAINT

### I.  INTRODUCTION

Plaintiff Gregory Black brings this action for declaratory judgment, injunctive relief, equitable relief and monetary relief instituted to secure the protections of and to redress the deprivation of rights secured under Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991,  and  the Americans with Disabilities Act, ("ADA"), 42 U.S.C. 12111, *et seq.*, as amended. Plaintiff alleges in violation of the law, Defendant failed to accommodate his disability, discriminated against him based on his disability, and or discriminated against him based on his gender.   Plaintiff is entitled to equitable relief, compensatory damages, liquidated damages, punitive damages, attorneys fees and costs.

### II.  JURISDICTION

1.      This Court has jurisdiction in accordance with 28 U.S.C. § 1331, 2201- 2202, 29 U.S.C. §§ 22601 *et seq.*, 42 U.S.C. § 12117, and 42 U.S.C. § 12133.  Venue is proper pursuant to 28 U.S.C. § 1391.

2.      Plaintiff has fulfilled all conditions precedent to the institution of this action under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. and Title I of the ADA.  Plaintiff timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act.  Plaintiff also timely filed his Complaint within ninety (90) days of the receipt of a Notice of Right to Sue issued by the EEOC.

**III.**    **PARTIES**

3.     Plaintiff, Gregory Black, is a male citizen of the United States and a resident of the State of Alabama.  Plaintiff is a person with a disability as that term is defined under the ADA, or a perceived disability.  He was an employee of the Defendant at its Ashford, Alabama location during the times relevant to this lawsuit.

4.     Defendant, YS Garments, Inc. d/b/a Next Level Apparel (hereinafter "Next Level"), is subject to suit under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and is an "employer" under the  ADA.  The employer employs at least fifteen (15) people.

**IV.**    **STATEMENT OF FACTS**

5.     Plaintiff possesses a disability as defined by the ADA and or Defendant perceived him as possessing a disability.

6.     Plaintiff was employed 9-10 months as an Audit Lead with Defendant.

7.     Approximately five auditors worked for Plaintiff and they were all women.

8.     Defendant charged Plaintiff and the additional auditors with the maintenance of accurate records and or inventory of merchandise shipped out of the building to fulfill customers' orders.

9.     The Order Fillers/Pickers pulled merchandise from the warehouse to satisfy orders and they would scan the merchandise to ensure the order was filled correctly and tracked for inventory.

10.     On or about June 20, 2017, Plaintiff had worked for roughly 2.5 hours when he started feeling ill.

11.     Plaintiff went to HR and based on his appearance was told he should go to a doctor and get checked out.

12.     Plaintiff drove to the doctor and upon arrival in the parking lot, before going in, suffered a health-related incident and was taken to the hospital; later diagnosed with a serious health condition, perceived as a disability.

13.      Plaintiff left the hospital after a week and continued under a doctor's care.

14.     On or about October 3, 2017, Plaintiff returned to work and submitted to HR a release from his doctor.  That release returned him to full duty with no restrictions as of October 4, 2017.

15.     Despite Plaintiff's doctor's release, Defendant did not allow Plaintiff to return to work. HR, instead, required Plaintiff to go the next day to the company's doctor and submit to a Fitness for Duty Physical or Test.

16.     When Defendant hired Plaintiff for the audit position, it did not require him to submit to a physical requiring a test involving his lifting of 50 pounds weight above his head 15 times.  He only had to carry the weight waist high for a short period, occasionally stepping up or down, lift it to his chest high, and lift it one time above his head.  This test was not relevant to Plaintiff's work in audit and the lifting he did during the test was not necessary to the essential functions of his audit job.

3

17.     As part of his test to return to work, this time Defendant's doctor's office required Plaintiff lift the 50 pounds of weight above his head 15 times making it much more strenuous.

18.     The "15 times" requirement was different than that administered for females

19.     The "15 times" requirement was different than that administered for employees, male and female, holding positions like that of Plaintiff, without a disability or perceived disability.

20.     This subsequent Fitness for Duty Test was less related to Plaintiff's work in audit than the initial Fitness for Duty Test at hire.

21.     Plaintiff successfully completed the Fitness for Duty tasks requested of him, but when he met with the doctor, not present for the test, the doctor told Plaintiff that he did not like what he was told about Plaintiff's performance.

22.     This doctor advised Defendant as to Plaintiff's performance during the test, as such, Defendant was aware or should have known Plaintiff was in need of an accommodation relative to the test itself or the non-essential parts of Plaintiff's job Defendant believed were substantially essential to his audit position.

23.     After meeting with the doctor, Plaintiff called HR and he was told he could not return to his prior position and the company was trying to find him a new position.

24.     Defendant had not filled Plaintiff's Audit Lead position and it remained open through at least October 17, 2017.

25.     Over the next week, Plaintiff called the HR department to find out when he could return to work.

26.     Each time, HR told Plaintiff it was waiting on someone to decide, until finally, he was told there was nothing the company could do for him.

27.      Plaintiff then received a notice of termination via letter in the mail.

4

28.     Oddly, the letter stated Plaintiff was not medically acceptable for the "Staging Lead position."  Plaintiff never held that position nor was he offered that position.

29.     Plaintiff's subordinates were the auditors he worked alongside, they were women, and not Order Fillers/Pickers or other staging employees that would report to a Staging Lead.

30.     Plaintiff could perform his Audit Lead duties as well as the duties of other open positions within the plant with and or without accommodation.

31.     Plaintiff was replaced and or his responsibilities were absorbed by a less qualified female and he was never offered any other open position.

## V.      CAUSES OF ACTION

### COUNT I
### TITLE I OF THE AMERICANS WITH DISABILITIES ACT
### (FAILURE TO ACCOMMODATE, DISCRIMINATION, DISPARATE TREATMENT)

#### Failure to Accommodate

32.     Plaintiff incorporates by reference as if fully stated herein, the paragraphs *supra* at ¶¶ 3-17, 20-30.

33.     Defendant was aware of Plaintiff's need for accommodation based on its perception of his disability and Plaintiff request for an accommodation.

34.     Defendant did not engage Plaintiff in an interactive process to determine whether a reasonable accommodation would allow Plaintiff to return to work in his old position or any other open position at the time.

35.     Instead, Defendant terminated Plaintiff's employment in violation of the Americans with Disabilities Act.

Intentional Discrimination

36.     Plaintiff incorporates by reference, as if fully stated herein, the paragraphs *supra* at ¶¶ 3-17, 20-30.

37.     Defendant perceived Plaintiff as disabled, and or Plaintiff was disabled as defined under the Americans with Disabilities Act.

38.     Plaintiff's disability or perceived disability was a substantially motivating factor in Defendant's decision to terminate his employment and or not place him another open position for which he was qualified, with or without accommodation.

39.     Defendant's termination of Plaintiff due to his disability or perceived disability violated the Americans with Disabilities Act.

Disparate Treatment

40.     Plaintiff incorporates by reference as if fully stated herein, the paragraphs *supra* at ¶¶ ¶¶ 3-17, 19-30

41.     Defendant subjected Plaintiff to a Fitness for Duty Test not administered to individuals without a disability or perceived disability.

42.     Defendant based its decision to terminate Plaintiff on the results of that disparately applied Fitness for Duty Test.

43.     Defendant's termination of Plaintiff due to the results of that Fitness for Duty Test violated the Americans with Disabilities Act.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(INTENTIONAL DISCRIMINATION AND OR DISPARATE TREATMENT)**

<u>Intentional Discrimination</u>

44.     Plaintiff incorporates by reference as if fully stated herein, the paragraphs *supra* at ¶¶ 3-18, 25, 27-28, and 31.

45.     Plaintiff's male gender was a substantially motivating factor in Defendant's decision to terminate his employment.

46.     Before allowing Plaintiff to return to work, Defendant subjected Plaintiff to a Fitness for Duty Test not administered to females performing work similar to his own.

47.     Based on the results of that disparately applied Fitness for Duty Test, Defendant terminated Plaintiff's employment.

48.     Defendant replaced Plaintiff with a less qualified female, formerly his subordinate.

49.     Plaintiff suffered an adverse employment action due to Defendant's gender-based discrimination in violation of The Civil Rights Act of 1964, as amended.

<u>Disparate Treatment</u>

50.     Plaintiff incorporates by reference as if fully stated herein, the paragraphs *supra* at ¶¶ 3-18, 25, 27-28, and 31.

51.     Before allowing Plaintiff to return to work, Defendant subjected Plaintiff to a Fitness for Duty Test not administered to females performing work similar to his own.

52.     Based on the results of that disparately applied Fitness for Duty Test, Defendant terminated Plaintiff's employment.

53.     Defendant replaced Plaintiff with a less qualified female, formerly his subordinate.

54.     Plaintiff suffered an adverse employment action as a result of Defendant's gender-based disparate treatment, in violation of The Civil Rights Act of 1964, as amended.

## VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, the Plaintiff, respectfully requests this Court to grant the following relief:

(a)     Issue an Order directing and requiring Defendant to pay Plaintiff damages for mental anguish, lost wages, salary, employment benefits, or other compensation reduced, denied, or lost by reason of Defendant's ADA violations, including nominal damages;

(b)     Issue an Order directing and requiring Defendant to pay Plaintiff's punitive and compensatory damages pursuant to the ADA;

(c)     Declare the Defendant violated Plaintiff's rights under Title VII;

(d)     Award Plaintiff equitable relief under Title VII, including but not limited to, back pay (including interest or an appropriate inflation factor and an enhancement to offset and adverse tax consequences associated with lump sum receipt of back bay), instatement/reinstatement and front pay if appropriate.

(e)     Award Plaintiff lost wages, salary, employment benefits, or other compensation reduced, denied, or lost by reason of Defendant's Title VII violations, compensatory damages, and punitive damages;

(f)     Issue an Order directing Defendant to reimburse Plaintiff for the costs and attorney's fees expended in the course of litigating this action, and pre-judgment and post-judgment interest.

(g)     Provide Plaintiff with such other and further relief, as the Court deems just and equitable.

Respectfully submitted,


*/s/ Robert J. Camp*
**ROBERT J. CAMP**
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
E-mail:  rcamp@wigginschilds.com


**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**


*/s/Robert J. Camp*
**OF COUNSEL**


Plaintiff requests this Honorable Court to serve via certified mail upon the defendant the following: Summons, Complaint.

**DEFENDANT'S ADDRESS:**
Registered Agent Solutions Inc.
c/o YS Garments, Inc. d/b/a Next Level Apparel
2 North Jackson Street,  Suite 605
Montgomery, Alabama 36104

YS Garments, Inc. d/b/a Next Level Apparel
214 Bruner Mill Road
Ashford, Alabama 36312


*/s/ Robert J. Camp*
**OF COUNSEL**


9